UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| LINDSAY S.[1], <br><br> Plaintiff, <br><br> vs. <br><br> KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY; <br><br> Defendant. | 5:21-CV-05078-DW <br><br><br> REDACTED ORDER |

Lindsay S. filed a complaint appealing the final decision of Kilolo Kijakazi, the acting Commissioner of the Social Security Administration, denying disability insurance benefits. (Doc. 1). Defendant denies claimant is entitled to benefits. (Doc. 5). The court issued a briefing schedule requiring the parties to file a joint statement of materials facts ("JSMF"). (Doc. 10). The parties' JSMF is incorporated by reference. Further recitation of the salient facts is incorporated in the discussion section of this order.

The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence and for the findings stated below, the claimant's motion to reverse the decision of the Commissioner

---

[1] The Administrative Office of the Judiciary suggested the court be more mindful of protecting from public access the private information in Social Security opinions and orders. For that reason, the Western Division of the District of South Dakota will use the first name and last initial of every non-governmental person mentioned in the opinion. This includes the names of non-governmental parties appearing in case captions.

(Doc. 13) is affirmed and the Commissioner's motion to affirm the decision of the commissioner (Doc. 14) is denied.

On September 14, 2018, Lindsay S. filed an application for Social Security disability benefits alleging an onset of disability date of July 27, 2013. (AR 13[2]).  The claim was initially denied on September 24, 2019, and denied upon reconsideration on May 11, 2020.  Id.  Lindsay S. requested an administrative hearing on July 7, 2020, and one was held on January 28, 2021.  Id.  at p. 10.  On May 25, 2021, the Administrative Law Judge (ALJ) issued a written decision denying benefits.  Id. at pp. 13-32.  Lindsay S. subsequently sought appellate review; her request was denied, making the ALJ's decision final.  Id. at p. 1.  It is from this decision that Lindsay S. timely appeals.

## I.   STANDARD OF REVIEW

The issue before this court is whether the ALJ's decision that Lindsay S. was not under a disability, as defined in the Social Security Act, from July 27, 2013, through May 25, 2021, is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006); Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's

---

[2] The court will cite to information in the administrative record as "AR ___." (Doc. 6)

conclusion." Cox v. Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the Commissioner's decision if that decision is supported by "good reason" and is based on substantial evidence. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005). A reviewing court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)). Issues of law are reviewed *de novo* with deference given to the Commissioner's construction of the Social Security Act. Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992).

The review of a decision to deny benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision." Reed, 399 F.3d at 920 (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).

The Social Security Administration established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to benefits under Title XVI which are:

**Step One:** Determine whether the applicant is presently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If the applicant is engaged in substantial gainful activity, he is not disabled, and the inquiry ends at this step.

3

**Step Two:** Determine whether the applicant has an impairment or combination of impairments that are severe, i.e. whether any of the applicant's impairments or combination of impairments significantly limit his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). If there is no such impairment or combination of impairments the applicant is not disabled, and the inquiry ends at this step. The regulations prescribe a procedure for analyzing mental impairments to determine whether they are severe, which includes completion of a Psychiatric Review Technique Form. Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992); 20 C.F.R. § 1520a.

**Step Three:** Determine whether any of the severe impairments identified in Step Two meets or equals a listing in Appendix 1, Subpart P, Part 404. 20 C.F.R. § 404.1520(d). If an impairment meets or equals a Listing, the applicant will be considered disabled without further inquiry. This is because the regulations recognize the "Listed" impairments are so severe that they prevent a person from pursuing any gainful work. Heckler v. Campbell, 461 U.S. 458, 460 (1983). If the applicant's impairment(s) are severe but do not meet or equal a Listed impairment the ALJ must proceed to step four.

**Step Four:** Determine whether the applicant is capable of performing past relevant work. To make this determination, the ALJ considers the limiting effects of all the applicant's impairments (even those that are not severe) to determine the applicant's residual functional capacity ("RFC"). If the applicant's RFC allows him to meet the physical and mental demands of his past work, he is not disabled. 20 C.F.R. §§ 404.1520(e); 404.1545(e). If the applicant's RFC does not allow him to meet the physical and mental demands of his past work, the ALJ must proceed to Step Five.

**Step Five:** Determine whether any substantial gainful activity exists in the national economy which the applicant can perform. To make this

determination, the ALJ considers the applicant's RFC, along with his age, education, and past work experience.  20 C.F.R. § 1520(f).

20 C.F.R. § 404.1520.  The plaintiff bears the burden of proof at steps one through four.  Barrett v. Shalala, 38 F.3d 1019, 1024 (8th Cir. 1994); 20 C.F.R. § 404.1512(a).  At step five, the burden of proof shifts to the Commissioner, which "is neither statutory nor regulatory, but instead, originates from judicial practices."  Brown v. Apfel, 192 F.3d 492, 498 (5th Cir. 1999).  "The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."  Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004).

## II.    DISCUSSION

The ALJ applied the five-step test and determined that Lindsay S. was not disabled.  (AR 13-32).

In evaluating step one, the ALJ determined that Lindsay S. had not engaged in SGA since July 27, 2013, the alleged onset date of disability.  Id. at p. 16.  At step two, the ALJ found that Lindsay S. suffered from these severe impairments: "depressive disorder; anxiety disorder; fibromyalgia; hypermobility syndrome; osteoarthritis right wrist; partial amputation of the fourth digit on the right hand; and obesity."  Id. (internal citations omitted).  Furthermore, the ALJ found the "objective medical evidence shows the claimant has severe mental impairments.  Abnormal mental status examination signs reported by AMS's (acceptable medical sources) include

5

depressed, anxious, and attention and concentration slightly down." Id. (internal citations omitted).

The ALJ concluded that Lindsay S. suffered from these non-severe impairments: claimant's hypertension; hyperlipidemia; vitamin D deficiency; Raynaud's disease; hypothyroidism; chronic constipation; and obstructive sleep apnea. Id. at p. 17. At step three, the ALJ found that Lindsay S. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in the relevant regulations, 20 C.F.R. Part 404 Subpart P, Appendix 1. Id. at pp. 17-18. In evaluating step four, the ALJ resolved that despite Lindsay S.'s impairments "she had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except:

> She can only frequently push and pull with the right upper extremity. She can only occasionally stoop, kneel, crouch, crawl, or climb ramps or stairs. She can never climb ladders, ropes, or scaffolds. She can only frequently handle and finger with the right upper extremity. She is limited to jobs that can be performed while using a hand-held assistive device, but only for prolonged ambulation or uneven terrain, and the contralateral upper extremity can be used to lift and carry up to the exertional limits. She must avoid all exposure to extreme cold, vibrations, unprotected heights, and the use of unguarded moving mechanical parts such as table saws, band saws, exposed mechanical gears, etc. She is limited to work that consists of only simple and routine tasks. She can tolerate no more than occasional interaction with the public, coworkers, and supervisors. She can tolerate no more than occasional changes in the work setting. She can only

6

occasionally use public transportation and is limited to only
occasional travel to unfamiliar places."

Id. at p. 19.  At step five, the ALJ decided that Lindsay S. is unable to perform

any past relevant work, holding that "[t]ransferability of job skills is not

material to the determination of disability because using the Medical-

Vocational Rules as a framework supports a finding that the claimant is 'not

disabled,' whether or not the claimant has transferable job skills."  Id. at p. 29.

The ALJ concluded that Lindsay S. has not been under a disability and is

ineligible for benefits.

Lindsay S. challenges three findings: 1) whether Lindsay S.'s

credibility about her physical and psychological symptoms should have

been rejected; 2) whether treating psychiatrist Dr. Hamlyn's opinions,

regarding psychological restrictions, should have been rejected; and 3)

whether treating physician Dr. Stacy's opinions, regarding physical

restrictions, should have been rejected.  (Doc. 13, p. 1).  Commissioner

argues there is substantial evidence to support the decision.  (Doc. 15).

**A. The ALJ erred in rejecting Lindsay S.'s credibility**

Lindsay S. argues the ALJ improperly rejected her credibility regarding

her physical and psychological symptoms.  (Doc. 13).  Commissioner argues

the ALJ properly considered Lindsay S.'s subjective complaints.  (Doc. 15).

"If an ALJ explicitly discredits a claimant's testimony and gives a good

reason for doing so, [the court] will normally defer to that judgment."  Hogan v.

Apfel, 239 F.3d 958, 962 (8th Cir. 2001); see Dukes v. Barnhart, 436 F.3d 923,

928 (8th Cir. 2006) (holding that where adequately supported, credibility findings are for the ALJ to make).

The Eighth Circuit has repeatedly "held that acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010) (quoting Heino v. Astrue, 578 F.3d 873, 881 (8th Cir. 2009). When evaluating a claimant's credibility as to subjective complaints, the ALJ must consider the Polaski factors.[3] Grindley v. Kijakazi, 9 F.4th 622, 630 (8th Cir. 2021); Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984). However, "[t]he ALJ is not required to discuss each Polaski factor as long as 'he acknowledges and considers the factors before discounting a claimant's subjective complaints.'" Halverson, 600 F.3d at 932 (quoting Moore v. Astrue, 572 F.3d 520, 524 (8th Cir. 2009)).

These factors include: "the claimant's prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions." Grindley, 9 F.4th at 630. "Another factor to be considered is the absence of objective medical evidence to support the complaints, although the ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence." Id.; see Reed, 399 F.3d at 920 (holding an ALJ may determine that a claimant's subjective complaints are not credible when there is objective medical evidence to the contrary; but, an "ALJ

---

[3] The Polaski factors largely mirror the regulations set forth in 20 C.F.R. §§ 404.1529 and 416.929. Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007).

may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence").  "[A]n ALJ is entitled to make a factual determination that a Claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary."  Jones v. Astrue, 619 F.3d 963, 975 (8th Cir. 2010).

"The interpretation of physicians' findings is a factual matter left to the ALJ's authority."  Adamczyk v. Saul, 817 F. App'x 287, 289 (8th Cir. 2020) (citing Clay v. Barnhart, 417 F.3d 922, 930 (8th Cir. 2005).  However, the ALJ cannot "play doctor," meaning that the ALJ cannot draw improper inferences from the record or substitute a doctor's opinion for his own.  Id.; see Pate-Fires v. Astrue, 564 F.3d 935, 946-47 (8th Cir. 2009) ("the ALJ's determination [that the claimant's] medical noncompliance is attributable solely to free will is tantamount to the ALJ 'playing doctor,' a practice forbidden by law"); Lund v. Weinberger, 520 F.2d 782, 785 (8th Cir. 1975) (ALJ "may not draw upon his own inferences from medical reports").

Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. See Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988).  The review of a decision to deny benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision … [the court must also] take into account whatever in the record fairly detracts from that decision."  Reed, 399 F.3d at 920 (quoting Haley, 258 F.3d at 747).

9

### 1. **Physical Condition**

In this case, the ALJ determined that Lindsay S.'s physical condition were inconsistent with the medical evidence.  (AR 26).  The ALJ noted that Lindsay S. alleged that she "is unable to work due to depression, anxiety disorder, panic disorder with agoraphobia,[4] hypermobility syndrome, chronic pain syndrome, migraines, chronic headaches, long-term knee problems, and a pulmonary embolism."  Id. at pp. 20-21.

The ALJ found, "inconsistencies between the medical evidence and the degree and persistence of several of the alleged symptoms and medication side effects."  Id. at p. 26.  The ALJ listed evidence that "supports physical limitations no greater than the ones the undersigned included in the residual functional capacity above."[5]  The supported findings are

1) The claimant's hypertension, hyperlipidemia, vitamin D deficiency, Raynaud's disease, hypothyroidism, 2016 pulmonary embolism, chronic constipation, obstructive sleep apnea, and 2016 gallbladder removal impairments are all non-severe (as shown in finding #3).
2) With the exception of the amputation on the distal fourth phalanx, January 2020 right hand x-rays were otherwise unremarkable/negative.
3) No mention of a wheelchair in any medical record from 2017 to 2021.

---

[4] "Agoraphobia . . . is a type of anxiety disorder in which [an individual] fear[s] and avoid[s] places or situations that might cause [the individual] to panic and . . . feel trapped, helpless or embarrassed. . . . The anxiety is caused by fear that there's no easy way to escape or get help if the anxiety intensifies." Melissa F.E. v. Kijakazi, CIV. 20-5075-JLV, 2022 U.S. Dist. LEXIS 77326 (D.S.D. Apr. 28, 2022) (quoting https://www.mayoclinic.org/diseases-conditions/agoraphobia/symptoms-causes/syc-20355987 (last visited February 21, 2022)).
[5] See supra p. 6 for the AJL's determination of Lindsay S.'s residual functional capacity.

4) July 2019 treatment record, claimant reported dizziness occurred occasionally

5) November 2019 treatment record includes a note by the claimant's treating provider that her hypermobility syndrome was stable.

6) November 2019, the claimant told a treating provider that her migraines were fairly controlled.

7) July and November 2019, claimant was advised to increase her physical exercise by her treating provider.

8) Examining Acceptable Medical Source's (AMS) reported the following from 2019-2021: No acute distress, tremors/asterixis, clubbing, cyanosis, or edema in any extremities and normal musculoskeletal range of motion, [head, eyes, ears, nose, and throat] HEENT, neck, lymph nodes, respiratory/lungs, cardio/heart, abdomen, and skin.

9) The ALJ found "no objective medical evidence showing the claimant is limited to lifting 1-2 pounds, can only climb one flight of stairs, can only stand for 15 minutes, can only walk for 5-10 minutes, cannot sit for more than 30 minutes, cannot squat, cannot kneel, and needs a couple of days to recover from taking a shower, i.e. the December 2019 abbreviated functional capacity evaluation states that it is a summary of the activities demonstrated during the evaluation and these demonstrated activities are inconsistent with the lack of abnormal physical examination signs reported by AMS's after 2019 (with the exception of the use of a cane)."

10) Treatment for the claimant's severe impairments from 2019-2021 was limited to oral pain medications.

11) An October 2020 treatment record states the claimant uses oxycodone regularly but only takes her tramadol occasionally.

12) In 2021, both the claimant's psychiatrist and primary care providers reported she does not have any side effects from her medications.

Id. at pp. 26-27.  The court will discuss each finding in turn.

11

In finding number one, the ALJ states that the impairments are non-severe (as shown in finding #3).  Id. at p. 26.  Finding #3 states "there is no mention of a wheelchair in any medical records from 2017-2021."   Id.  Lindsay S. never asserted she is wheelchair bound or she requires a wheelchair to get around.  The Commissioner asserts that Lindsay S. alleged that she needed a wheelchair for long distances, like within a hospital, which was proven untrue.  (Doc. 15, p. 6).  However, what Lindsay S. stated was she "use[s] the cane when walking shorter distances outside the house for medical appointments with being dropped off at the door.  [She] need[s] a wheelchair if traveling longer distances, such as within the hospital."  (AR 266).  There is no evidence of whether she was dropped off at the front door or the distance between the front door and where her treatment was provided.  There was testimony that her mom frequently waited in the car, indicating the ability for her mom to drop her off at the closest entrance.  Id. at p. 59.  Without more evidence, finding one and three are not "good reasons" to discount Lindsay S.'s credibility.

The ALJ, in finding number two, determined that the fact that her hand x-rays were unremarkable/negative contradicted her claim of disability; however, this fact is irrelevant as she did not claim disability due to bone issues.  Finding four and six are irrelevant as Lindsay S. is not claiming disability due to dizziness or migraines.  Thus, these finding are not a "good reasons" to discount Lindsay S.'s credibility.

Finding five and seven provide no support as the fact that doctors said her hypermobility syndrome was stable and she was advised to increase her

12

physical exercise speaks nothing to the nature of her disability.  Without knowing the doctor's previous diagnosis, the opinion that her syndrome is stable is not a "good reason" to discount Lindsay S.'s credibility.  Furthermore, the fact that she was advised to increase her exercise does not inform as to her condition and is not a "good reason" to discount Lindsay S.'s credibility.

The ALJ's reasons to discount Lindsay S.'s credibility due the fact that her treatment was limited to oral medication (finding #10), she took oxycodone regularly but tramadol occasionally (finding #11), and she did not have any side effects from her medications (finding #12), although factors under Poloski, does not speak to the nature of her disability; thus, these are not a "good reason" to discount Lindsay S.'s credibility.

Finding number eight is the ALJ finding of the Acceptable Medical Source's (AMS) report of the following normal signs from 2019-2021.  This report speaks nothing to her hypermobility/Fibromyalgia and her fatigue.

Finding nine states that "no objective medical evidence showing" and then lists several conditions.  However, although a factor under Polaski, the absence of objective medical evidence cannot be the sole reason to discount credibility.  If the medical records contradicted rather than just an absence of, that is a valid reason to discount a claimant's credibility.

The ALJ exclusively considered the medical evidence and determined Lindsay S.'s subjective complaints were unsupported; however, "the ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence."  Grindley, 9 F.4th at 630.

Furthermore, the ALJ failed to properly consider all of the <u>Polaski</u> factors, specifically Lindsay S.'s daily activities, aggravating factors, and work history. [6] Finally, as detailed above, the ALJ's decision to discount Lindsay S.'s physical symptoms was not supported by "good reason." <u>Grindley</u>, 9 F.4th at 630; <u>Hogan</u>, 239 F.3d at 962; <u>Dukes</u>, 436 F.3d at 928; <u>Guilliams</u>, 393 F.3d at 801.

### 2. Physiological Condition

The ALJ, found "inconsistencies between the medical and non-medical evidence and the degree and persistence of several of the alleged psychological symptoms, e.g., terror all the time, overwhelming and unbearable fear, shuts down/passes out when too stressed or when panic attacks become too severe, fears everything, cannot have anyone in the house, will not answer the phone, panic attacks immediately upon leaving the house, is unable to leave her house, can only pay attention for 30 minutes, cannot be around anyone other than her mother for more than 30 minutes, cognitive impairments, and gets only 1-2 hours without medication side effects at a time, as well as difficulty

---

[6] The ALJ's failure to discuss Lindsay S.'s work history is an error that calls for reversal. <u>See</u> <u>Benskin v. Bowen</u>, 830 F.2d 878, 882 (8th Cir. 1987) (holding that although the ALJ's opinion did not discuss the plaintiff's work history in detail, "this does not entitle the District Court to undertake this consideration for itself—to engage in fact-finding in a social-security case is not within the province of a federal court. An arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where, as here, the deficiency probably had no practical effect on the outcome of the case. Our feeling that this error, if there was one, is not significant is bolstered by the fact that claimant's brief in this Court does not argue that the ALJ's finding should be reversed because his opinion did not adequately discuss the claimant's work history.").

going places unaccompanied." (AR 27).  The ALJ listed reasons for discounting her mental ability including that:

1. The claimant testified she drove to her attorney and psychiatrist's offices not too long before her scheduled hearing.

2. The claimant participated in both telehealth treatments and her disability hearing by telephone.

3. A September 2020 treatment record shows the claimant told her psychiatrist that she has been feeling better in general, she takes her clonazepam fairly regularly and it is helpful, and she takes her lorazepam occasionally (i.e. she had a 30-pill bottle that had been prescribed a few years earlier, she takes it when she has more severe panic attacks, and it works well to calm her down).  She asked for a renewal of lorazepam and wanted to continue her current medication regimen. Her psychiatrist noted that records showed the last time lorazepam had been prescribed was back in 2016, so one bottle of 30 tablets lasted her four years.

4. November 2019 and December 2020 treatment records show the claimant indicated she was only having moderate depression and anxiety symptoms.  Her psychiatrist noted their treatment goal was to reduce them down to a mild level.

5. The claimant's increased use/dosage of her psychotropic medications in December 2020 corresponds with her report in December 2020 that she was in the process of applying for disability and worried about what will happen. She also reported that she had been avoiding going out because of the COVID-19 risks.

6. In understanding, remembering, or applying information, the claimant has no more than a moderate limitation.

    a. Evidence from non-medical sources shows she can complete forms that provide information about her health and work history, play mobile games, remember to take medicine, shop for household and personal care items by computer, pay bills, count change, handle a

15

savings account, use a checkbook/money orders, remember to go places, follow written instructions, and maintain an active driver's license.

    b. The medical evidence shows her memory was intact for all spheres.

7. In interacting with others, the claimant has no more than a moderate limitation.

    a. Non-medical sources shows she can live with others and has never been fired or laid off from a job because of problems getting along with other people.

    b. Medical evidence shows she was pleasant and cooperative, with good eye contact.

8. With regard to concentrating, persisting, or maintaining pace, the claimant has no more than a moderate limitation

    a. Evidence from non-medical sources shows she can read, watch TV/movies, and play mobile games.

    b. The medical evidence shows she had good attention/concentration and was generally alert and/or oriented.

9. As for adapting or managing oneself, the claimant has no more than a moderate limitation.

    a. Non-medical sources shows she can feed herself, use the toilet, take medicine, manage money, care for her mother when necessary, and her ability to handle money has not changed since her conditions began.

    b. Medical evidence shows she was well-groomed with normal speech, normal affect, linear/logical/goal-oriented thought processes, no delusions/phobias/obsessions/other indications of distorted thought content, no suicidal or homicidal ideation, did not appear to be responding to internal stimuli, and good insight/judgment

10. The last reports of passing out in medical evidence was in 2012.

11. In 2021, the claimant's psychiatrist and primary care providers reported she does not have any side effects from her medications.

16

Id. at pp. 27-29.

First, Lindsay S. reported that her agoraphobia keeps her from leaving the house, leaving only for medical appointments, and the social anxiety and panic disorder make it extremely to interact with people.  Id. at pp. 59, 128. Lindsay S. has left her house approximately three times in the last seven years without her mother.  Id.  This is consistent with Dr. Hamlyn's statements, that begin in 2016, regarding Lindsay S.'s agoraphobia which cause "difficult[ies] leaving her residence due to anxiety, panic."  (Doc. 10, ¶ 152).  Lindsay S.'s ability to drive to her attorney and psychiatrist's offices does not contradict with her extreme difficulties with leaving her home.  Furthermore, "it is well-settled law that 'a claimant need not prove she is bedridden or completely helpless to be found disabled.'  Reed, 399 F.3d at 923 (citing Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir. 1989)).  Therefore, this is not a "good reason" to discount Lindsay S.'s credibility.

Second, the fact that claimant participated in both telehealth treatments and her disability hearing by telephone are not inconsistent with any of Lindsay S.'s psychological symptoms; therefore, this is not a "good reason" to discount Lindsay S.'s credibility.

Third, September 2020 treatment record does not discount Lindsay S.'s credibility but rather supports her statement that she takes some medication regularly and others when she has more severe panic attacks.  For example, Lindsay S. said she took Lorazepam for panic attacks when "I reach the point that, you know, you feel like you could die or, you know, you feel like you could

17

explode." (Doc. 10, ¶ 163). Thus, this is not a "good reason" to discount Lindsay S.'s credibility.

Fourth, the ALJ's belief that the November 2019 and December 2020 treatment records show the claimant indicated she was only having moderate depression and anxiety symptoms is incorrect. It is true that in the December 2020 treatment note, Dr. Hamlyn noted that the treatment goal was to reduce the level of anxiety to a mild level (AR 102); but, Lindsay S.'s condition was mood was depressed and anxious (AR 942, 931, 925, 919, 913, 1005, 1017).

Additionally, on November 13, 2019, Dr. Jennifer Williamson noted that "she has history of anxiety with agoraphobia" and that she was following with a psychiatrist for this. Williamson noted she had insomnia which was fairly controlled and that "she states that she sleeps during the day and remains awake at night because she feels safer doing so." Id. at p. 905.

Furthermore, although Lindsay S. often indicated she was having moderate symptoms of anxiety (AR 102, 924); the ALJ must be mindful that in regard to mental disorders, the Commissioner's decision "must take into account evidence indicating that the claimant's true functional ability may be substantially less that the claimant asserts or wishes." Hutsell v. Massanari, 259 F.3d 707, 713 (8th Cir. 2001) (quoting Parsons v. Heckler, 739 F.2d 1334, 1341 (8th Cir. 1984)).

Additionally, the ALJ must consider Lindsay S.'s conditions in the context of Lindsay S.'s highly structured life. Lindsay S. had increased anxiety when she interacted anonymously online with people that she had to take

18

additional anxiety medication on a frequent basis.  (Doc. 10, ¶ 158-160).  An ALJ must consider the effects of "structured setting" when drawing conclusions about a person's ability to work from looking at their daily activities.  Nowling v. Colvin, 813 F.3d 1110, 1122-23 (8th Cir. 2016); 20 C.F.R. § pt. 404, subpt. P, app. 1.  If a claimant's symptomatology is controlled or attenuated by psychosocial factors, ALJs must consider their ability to function outside of such highly structured settings.  Id.  Here, the ALJ failed to consider the effects of Lindsay S.'s highly structured life and her ability to function outside of those settings.  The Commissioner argues that Lindsay S. did not have a highly structured life because she lived with her mother and her mother worked thereby leaving her alone for stretches at a time.  (AR 47, 60).  However, those facts are not conflicting; one can have a highly structured life and be left alone for stretches of time.  The ALJ failed to consider the effects of Lindsay S.'s highly structured life and her ability to function outside of those settings.

Lindsay S.'s case is similar to Stickler in which the claimant had great difficulties psychologically in leaving the house and their treating psychiatrist said she was unable to hold full time employment.  Stickler v. Colvin, 173 F. Supp. 3d 925, 941-42 (D.S.D. 2016).  The court held that "the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work." Id. (quoting Hogg v. Shalala, 45 F.3d 276, 278–79 (8th Cir. 1995)). Additionally, when the ALJ does not identify the evidence in the record that supports a finding that the claimant can regularly leave his home and when

none of claimant's daily activities are inconsistent with the claim that he cannot, this court finds that the ALJ's determination is not supported by substantial evidence in the record.  Loomis v. Kijakazi, No. 5:21-CV-05005-KES, 2022 WL 3594043 (D.S.D. Aug. 22, 2022).

Similar to Strickler, Lindsay S. is able to occasionally leave the house by herself and do light housework, and her treating psychiatrist opined she was unable to hold full time employment.  Lindsay S.'s disability must be considered in light of her structured environment.

Furthermore, the ALJ's findings six, seven, eight, and nine are more instances of the ALJ's failure to consider the effects of a highly structured life and one's ability to function outside of that setting, especially in the workplace.

Finding six is the ALJ's opinion that "in understanding, remembering, or applying information, the claimant has no more than a moderate limitation." (AR 28).  However, the fact that she is able to participate in the stated daily activities and have an intact memory for all spheres is not a "good reason" to discount Lindsay S.'s credibility regarding her psychological symptoms.

Finding seven is the ALJ's belief that Lindsay S. has no more than a moderate limitation in interacting with others based on her ability to live with others, not be fired, and medical evidence that she was pleasant and cooperative, with good eye contact.  The fact that Lindsay S. "has never been fired or laid off from a job because of problems getting along with other people" (finding #7) is not relevant because her anxiety developed after she was taken out of work due to her severe medical problems in October of 2013 and she has

20

not even attempted to go back into the workplace since that time, due to significant troubles leaving her home on her own.

Furthermore, the ALJ believes that because Lindsay S. is able to live with others, that she only has a moderate limitation in her ability to interact with others (AR 28); however, this directly fails to consider Lindsay S.'s structured life and her ability to function outside of that setting, specifically at a place of employment. See Nowling, 813 F.3d at 1122-23 (8th Cir. 2016) ("Simply put, the nature of the medical condition and the nature of the life activities, including such considerations as independence, should be considered against the backdrop of whether such activities actually speak to claimant's ability to hold a job. Participation in activities with family or activities at home and at 'your own pace' may not reflect an ability to perform at work."). The ALJ, on its own, coined the belief that Lindsay S. has no more than a moderate limitation in interacting with others. This is an example of the ALJ improperly substituting their own law opinion for that of a medical or psychological expert on a complication question. In regard to the pages the ALJ cited to, Lindsay S. and her mother state that authority figures can make Lindsay S. "especially anxious to downright terrified" and she is "terrified of them. Extremely." (AR 266, 298). That does not support a finding that Lindsay S. has no more than a moderate limitation in interacting with others.

Finding eight is that Lindsay S. has no more than a moderate limitation in her ability to concentrating, persisting, or maintaining pace based on her interactions at home and the doctor's office, which are highly structured

21

settings.  The ALJ fails to consider the effect of those structured settings on Lindsay S.'s ability to function in the workplace.

Finding nine is the ALJ's belief that Lindsay S. has no more than a moderate limitation for adapting or managing oneself.  First, Lindsay S.'s ability to read, watch TV/movies, and play mobile games within her home does not speak to her ability to function outside.  Second, medical evidence shows she had good attention/concentration and was generally alert and/or oriented also does not speak to her ability to participate in the workforce.  See Hutsell, 259 F.3d at 713 (citing Gude v. Sullivan, 956 F.2d 791, 794 (8th Cir. 1992)); Fleshman v. Sullivan, 933 F.2d 674, 676 (8th Cir. 1991)) ("doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity").  Therefore, the Lindsay S.'s ability to function during the treatment program is not inconsistent with the finding of a disability.

Finding five is the ALJ's reason for discounting Lindsay S.'s psychological symptoms due to the claimant's increased use/dosage of her psychotropic medications which corresponds with her report in December 2020 that she was in the process of applying for disability and worried about what will happen. She also reported that she had been avoiding going out because of the COVID-19 risks.  (AR 28).  The ALJ's statement is not a good reason to discount Lindsay S.'s credibility.

Finally, the facts that Lindsay S. was last reported passing out in 2012 (finding #10) and that she does not have any side effects from her medication

22

(finding #11), although <u>Polaski</u> factors, are not "good reasons" for discounting her credibility.

The court is to defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a "good reason" for doing so. <u>Hogan</u>, 239 F.3d at 962.  Here, the ALJ did not provide good reasons for discounting Lindsay S.'s credibility.  The ALJ failed to properly analyze the effects of Lindsay S.'s structured setting and her ability to function outside of those settings as required by the regulations.  <u>Nowling</u>, 813 F.3d at 1122-23 (referencing 20 C.F.R. § pt. 404, subpt. P, app. 1).  The ALJ erred in discounting Lindsay S.'s credibility regarding her psychological symptoms.

### B. ALJ erred in rejecting Dr. Hamlyn and Dr. Stacy's opinions

Although ALJs are no longer[7] directed to afford controlling weight to treating source opinions, the regulations still recognize the "foundational nature" of the observations of treating sources.  <u>Barrett v. Berryhill</u>, 906 F.3d 340, 343 (5th Cir. 2018).

When treating sources provide opinions, the regulations suggest that they will often be given greater weight because "the examining relationship provides them with a better understanding of an applicant's condition."  <u>Id</u>. (citing 20 C.F.R. § 404.1520c(c)(3)(v) (a "medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder")).  However, "when the

---

[7] Because Lindsay S.'s social security claim was filed after March 27, 2017, the new rules of 20 C.F.R. § 404.1520c regarding the consideration of medical opinions apply.

treating physician's opinion consists of nothing more than vague, conclusory statements," "a "treating physician's opinion deserves no greater respect than any other physician's opinion." Kraus v. Saul, 988 F.3d 1019, 1026 (8th Cir. 2021).

The ALJ must "evaluate the persuasiveness of medical opinions by considering 1) whether they are supported by objective medical evidence, 2) whether they are consistent with other medical sources, 3) the relationship that the source has with the claimant, 4) the source's specialization, and 5) any other relevant factors." Bowers v. Kijakazi, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)). However, "[t]he first two factors— supportability and consistency—are the most important." Id. (citing 20 C.F.R. § 404.1520c(a)).

The ALJ is required to view the medical source opinion in the context of the claimant's entire medical record. Despain v. Berryhill, 926 F.3d 1024, 1028 (8th Cir. 2019) (citing Cox, 345 F.3d at 609); see also Phillips v. Saul, No. 1:19-CV-34, 2020 WL 3451519, *3 (E.D. Ark. 2020) (applying Despain to medical opinions evaluated under § 404.1520c).

"A treating physician's assessments 'possess little evidentiary value' when they 'consist of nothing more than vague, conclusory statements,' such as 'checked boxes, circled answers, and brief fill-in-the-blank responses." Hilliard v. Saul, 964 F.3d 759, 762 (8th Cir. 2020) (quoting Thomas v. Berryhill, 881 F.3d 672, 675 (8th Cir. 2018)); see also Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001) ("the checklist format, generality, and

24

incompleteness of the assessments limit their evidentiary value"); <u>Wildman v. Astrue</u>, 596 F.3d 959, 964 (8th Cir. 2010) (affirming ALJ's discounting of a physician's checkbox opinion because it cited no medical evidence and provided little to no support for its conclusions).

### 1. Dr. Hamlyn

Lindsay S. argues the ALJ improperly rejected "Dr. Hamlyn's opinion that Lindsay S. had marked limitations in her ability to respond appropriately to usual work situations and to changes in a routine work setting due to her anxiety." (Doc. 13, p. 25). Lindsay S. states that Dr. Hamlyn's opinions, which are based on his numerous visits with Lindsay S., are supported and consistent with Lindsay S. and her mother's testimony showing her difficulties with anxiety over the years, despite her being out of the workforce and being able to manage her symptoms through an extremely "structured setting." <u>Id.</u> The ALJ found Dr. Hamlyn's following limitations unpersuasive:

1) all the marked limitations above--which are Lindsay S.'s abilities to:

   a. understand, remember, and carry out complex instructions; make judgments on complex work-related decisions; and respond appropriately to usual work situations and to changes in a routine work setting.

   b. sustain an ordinary routine without special supervision; complete a normal workday/work week; respond appropriately to changes in the work setting; understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual

within customary tolerances; set realistic goals or make plans

independently of others; and tolerate normal levels of stress

2) Lindsay S. will be off task 20% of the time

3) she will miss 10 workdays each month

4) the moderate limitations in her ability to understand and

remember very short and simple instructions, make simple work-

related decisions, and make judgments on simple work-related

decisions

(AR 23-24).  The ALJ opined that these limitations are inconsistent and

unsupported by other evidence.  Primarily, the ALJ reasons they are

unsupported by:

1) Dr. Hamlyn's reports in November 2019 and December 2020 that
   Lindsay S.'s depression and anxiety symptoms were no more than
   moderate
2) nonmedical sources showing she can complete forms that provide
   information about her health and work history, play mobile games,
   pay bills, count change, handle a savings account, use a
   checkbook/money orders, maintain an active driver's license,
   watch TV/movies, feed herself, care for her mother when
   necessary, and she has never been fired or laid off from a job
   because of problems getting along with other people
3) normal mental status examination signs reported by AMS's after
   2019: Memory intact for all spheres, pleasant, cooperative, good
   attention/concentration, well-groomed, normal affect,
   linear/logical/goal-oriented thought processes, and good insight
   and judgment

Id. at p. 24.  The ALJ found the "remainder of Dr. Hamlyn's opined limitations

persuasive."  Id.

First, the ALJ's claim that Lindsay S.'s depression and anxiety symptoms

were no more than moderate as evidence is by Dr. Hamlyn's November 2019,

and December 2020 medical reports is incorrect.

26

The November 5, 2019, report states that "Lindsay S. states she has quite a bit of anxiety and panic symptoms currently, though she felt her medications were helpful."  Id. at p. 919.  Dr. Hamlyn noted, "she is starting to reach out on a online gaming platform to try to have social interaction. Even this has been difficult for her and generates anxiety."  Id.  Dr. Hamlyn noted that Lindsay S. "is having moderate to severe anxiety symptoms" and "still has depression that she considers to be moderate in intensity."  Id. at p.  924.  Therefore, the ALJ's claim that Lindsay S.'s depression and anxiety symptoms were no more than moderate is unsupported by the record.

Dr. Hamlyn's December 8, 2020, medical report stated that Lindsay S. has "ongoing depression and anxiety symptoms."  Id. at p. 1017.  Dr. Hamlyn noted that Lindsay S.'s diagnoses includes Dysthymia, panic disorder with agoraphobia, generalized anxiety disorder.  Id. at p. 1018.  Dr. Hamlyn's treatment goal was to reduce the level of depression and anxiety symptoms down to a mild level.  Id. at p. 1023.  Dr. Hamlyn noted that the patient indicates that she has ongoing moderate depression symptoms and moderate symptoms of anxiety.  Id.

It is true that Lindsay S. told Dr. Hamlyn that she has moderate depression and anxiety symptoms.  However, the ALJ must be mindful that in regard to mental disorders, their decision "must take into account evidence indicating that the claimant's true functional ability may be substantially less that the claimant asserts or wishes."  Hutsell, 259 F.3d at 711 (quoting Parsons v. Heckler, 739 F.2d 1334, 1341 (8th Cir. 1984)).  Furthermore, this

finding must be considered in light of the "highly structured" setting in which Lindsay S. lives.  Lindsay S. rarely leaves her home and had increased anxiety when she interacted anonymously online with people, to the point that she had to take additional anxiety medication on a frequent basis to combat her fears. (Doc. 10, ¶ 158-160); see Stickler, 173 F. Supp. 3d at 942 (quoting Hogg v. Shalala, 45 F.3d at 278–79 ("the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work")); Banks, 258 F.3d at 832 ("How many times must we give instructions that [watching television, visiting friends, and going to church] do not indicate that a claimant is able to work full time in our competitive economy?").  The ALJ failed to consider the effects of Lindsay S.'s highly structured life and her ability to function outside of those settings.

The Commissioner argues that Lindsay S. did not have a highly structured life because she lived with her mother and her mother worked thereby leaving her alone for stretches at a time.  (AR 47, 60).  As noted above, those facts are not conflicting; one can have a highly structured life and be left alone for stretches of time.

Second, the ALJ found Dr. Hamlyn's medical opinions to be inconsistent with nonmedical sources that she can perform certain activities such as the ability to: provide information about her health and work history, play mobile games, feed herself, watch TV and movies, pay bills, "care for her mother when

necessary,"[8] count change, handle a savings account, and use a checkbook/money orders.  However, those activities are not inconsistent with her diagnosis of depression, anxiety, and a panic disorder with agoraphobia, which makes her unable to work.  Furthermore, the ALJ failed to take into consideration Lindsay S.'s structured life and her ability to function outside that setting when performing those tasks.

Additionally, the fact that Lindsay S. "has never been fired or laid off from a job because of problems getting along with other people" is not relevant because her anxiety developed after she was taken out of work due to her severe medical problems in October of 2013 and she has not even attempted to go back into the workplace since that time, due to significant troubles leaving her home.

Third, the ALJ states that after 2019 Lindsay S. had a normal findings mental status examination, as reported by AMS, therefore Dr. Hamlyn's opinions are unsupported.  (AR 839, 913, 919, 915, 931, 937, 976, 1005, 1011-12, 1016).[9]  This court has looked at each citations to AMS and did not find that the AMS reports contradicted or lessened Dr. Hamlyn's opinions.  The fact that Lindsay S. is able to be "pleasant, cooperative, good attention/concentration, [and] well-groomed" at a doctor's appointment (AR 24) does not illustrate her abilities outside of her "highly structured" life.

---

[8] Hearing Testimony revealed that Lindsay S. and her mother both "kind of help[ed] each other in some cases . . . [she] do[es] feel very guilty relying on her as much as [she] have to."  (AR 48).
[9]  The court modified the ALJ's citation to match the AR record.

Furthermore, the fact that Lindsay S.'s "Memory [is] intact for all spheres," she has a "normal affect," she has a "linear/logical/goal-oriented thought processes, and good insight and judgment" does not indicate she will function in those capacities outside of her "highly structured" life.

Finally, in briefing, the Commissioner asserts that "Dr. Hamlyn's opinions were of little evidentiary value as they conclusory in nature and predominately feature circle-type answers and brief fill-in-the-blank." (Doc. 15, p. 13).   Dr. Hamlyn's opinions are based off his numerous visits with Lindsay S. over approximately five years, during which he noted Lindsay S. had anxiety, panic disorder with agoraphobia, and depression.  (AR 878, 979, 993, 1006, 1012, 1019).  Dr. Hamlyn's opinions detailing Lindsay S.'s inability to work due to her disability are supported by Lindsay S. and her mother's testimony, and Dr. Stacy's medical opinions.  Furthermore, the ALJ decided to accept some of Dr. Hamlyn's opinions, while rejecting others.  The ALJ should not accept Dr. Hamlyn's opinions if it found them to be conclusory.

The ALJ's decision to reject Dr. Hamlyn's opinions was not "supported by good reason" nor "based on substantial evidence."  Guilliams, 393 F.3d at 801.

## 2. Dr. Stacy

Kelly Stacy, Lindsay S.'s long time treating physician, medically opined the claimant would likely be off task more than 25% of the time; the ALJ found that opinion unpersuasive.  (AR 25).  The ALJ believed this off task limitation to be "inconsistent with Dr. Stacy's own opinion that the claimant would also never be absent from work (AR 1002) and the lack of medication side effects

reported by medication providers in 2021 (AR 981, 1003)."[10]  Id.  The ALJ
believed this off-task limitation to be unsupported by the lack of abnormal
physical signs reported by examining AMS's from 2019 forward (with the
exception of the use of a cane), including Dr. Stacy's own examinations (AR
715, 724, 839, 892-93, 908-10, 913, 919, 925, 931, 937, 976, 997, 1029)." [11]
Id. (internal citations to AR added match ALJ's citations).

Lindsay S. argues that "Dr. Stacy's opinions are well supported by her
treatment notes showing her waxing and waning symptoms, for which she
regularly prescribed narcotic pain medications for the time period at issue, and
by Lindsay S. and her mother's testimony about her limited activities and
symptoms."  (Doc. 13, p. 26).

This court does not find the ALJ rejection of the Claimant's physical
complaints to be supported by substantial evidence. Dr. Stacy's medical
opinion is well supported and consistent with her treatment notes showing
Lindsay S.'s waxing and waning symptoms.

First, the ALJ found Dr. Stacy's 25% off task limitation to be inconsistent
with Dr. Stacy's own opinion that the claimant would also never be absent from
work, as evidenced in AR 1002.  (AR 25).  The 2020 report states, from what
this court can decipher, that the patient has days that "wax & wane but has
significant deficit on the bad days.  The good days are still decreased from the
average pt.  She has significant agoraphobia therefore this limits ability to

---

[10] The court modified the ALJ's citation to match the AR record.
[11] Again, the court modified the ALJ's citation to match the AR record.

work." Id. at p. 1002.  Furthermore, Dr. Stacy checked a box stating that if the patient if working full time would never be absent from work due to her condition.  Id.  These two opinions are not contradictory; one with "significant agoraphobia" be off task 25% of the time and still not miss work.

Second, the ALJ believed the lack of medication side effects reported by medication providers in 2021 to be an inconsistency with Dr. Stacy's opinion. Id. at pp. 981, 1003.  The opinion that Lindsay S. would miss 25% of work and her lack of side effects are not contradictory; therefore, the reason to discount Dr. Stacy's opinion is not supported by substantial evidence.

Third, the ALJ believed this off-task limitation to be unsupported by the lack of abnormal physical signs reported by examining AMS's from 2019 forward (AR 715, 724, 839, 892-93, 908-10, 913, 919, 925, 931, 937, 976, 997, 1029).[12]  (AR 25).  The finding of these normal physical signs and being off task more than 25% of time are irrelevant to each other.  One can have the inability to focus while still having normal physical signs.  Furthermore, this court looked at each citation and did not find evidence to support discounting Dr. Stacy's opinion.

Lastly, Dr. Hamlyn's and Dr. Stacy's opinions do not conflict. Dr. Hamlyn's statement that Lindsay S. "cannot work any job" (AR 883) needs to be viewed in the context of the entire report in which Dr. Hamlyn wrote that "Ms. Lindsay S. has both chronic pain and depression/anxiety that interferes with

---

[12] The court modified the ALJ's citation to match the AR record.

her ability to work at any job on a consistent basis." (AR 878). When viewed in context of the entire report, the opinions support each other.

The ALJ's decision to reject Dr. Stacy's opinions was not "supported by good reason" nor "based on substantial evidence." Guilliams, 393 F.3d at 801.

### III.   Remand is Unnecessary

At step five, the "burden of production shifts to the Commissioner." Stormo, 377 F.3d at 806. The court may affirm, modify, or reverse the Commissioner's decision, with or without remand to the Commissioner for a rehearing. 42 U.S.C. § 409(g). If the court determines that the "record overwhelmingly supports a disability finding and remand would merely delay the receipt of benefits to which the plaintiff is entitled, reversal is appropriate." Thompson v. Sullivan, 957 F.2d 611, 614 (8th Cir. 1992).

Mark Schwager, a vocational specialist, testified at the administrative hearing. (AR 72-76). Mr. Schwager concluded that "if an individual has marked restrictions in their ability to respond appropriately to usual work situations and to do changes in a routine work setting, where marked is defined as there is a serious limitation in this area, there is substantial loss in the ability to effectively function," that would "prohibit any sort of competitive, gainful employment." Id. at p. 76.

Remand to the Commissioner is neither necessary nor appropriate in this case. The Commissioner's own final witness resolves this case in favor of claimant. Ms. Lindsay S. is disabled and entitled to benefits. Reversal is the appropriate remedy. See Cumella v. Colvin, 936 F.Supp 1120 (D.S.D. 2013)

(granting the claimant benefits when the Commissioner's vocational specialist testified that if the treating physician's limitations were applied, the claimant could not perform any job).

## ORDER

Based on the above analysis, it is hereby

ORDERED that claimant's motion to reverse the decision of the Commissioner (Doc. 13) is granted and the Commissioner's motion to affirm (Doc. 14) is denied.

IT IS FURTHER ORDERED that the decision of the Commissioner of May 25, 2021, is reversed and the case is remanded to the Commissioner for the purpose of calculating and awarding benefits to the plaintiff.

DATED this 27th day of March, 2023.

BY THE COURT:

DANETA WOLLMANN
United States Magistrate Judge